**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MONSANTO COMPANY and<br>MONSANTO TECHNOLOGY LLC,<br><br>    Plaintiffs,<br><br>        vs.<br><br>PIONEER HI-BRED INTERNATIONAL, INC.<br>and E.I. DU PONT DE NEMOURS AND<br>COMPANY,<br><br>    Defendants. | Case No. 12-cv-1090<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs, Monsanto Company and Monsanto Technology LLC (collectively "Monsanto"), bring this action against Defendants, Pioneer Hi-Bred International, Inc. ("Pioneer") and E.I. du Pont de Nemours and Company ("DuPont") (collectively "Defendants") because Pioneer and DuPont are willfully infringing U.S. patents granted to Monsanto for innovations in seed development technology.  Plaintiffs allege as follows:

PARTIES

1.      Plaintiffs Monsanto Company and Monsanto Technology LLC are both corporations organized and existing under the laws of the State of Delaware, having principal places of business at 800 North Lindbergh Boulevard, St. Louis, Missouri 63167.  Monsanto Technology LLC is a wholly-owned subsidiary of Monsanto Company.

2.      On information and belief, Defendant Pioneer is an Iowa corporation with its principal place of business located in Polk County, at 7000 NW 62nd Ave., Johnston, Iowa 50131.

3.      On information and belief, Defendant DuPont is a Delaware corporation with its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

**JURISDICTION AND VENUE**

4.      This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.      Pioneer is subject to personal jurisdiction in the State of Missouri because, among other things, Pioneer has purposely availed itself of the benefits and protections of Missouri's laws such that it should reasonably anticipate this Court exercising jurisdiction over it. For example, Pioneer has purposely availed itself of the benefits and protections of Missouri's laws by registering with the State of Missouri to do business in Missouri, and by maintaining offices and an agent for service of process in Missouri.  Pioneer and/or its agents have continuous and systematic contacts with this District and regularly transact business here.  For example, Pioneer's largest soybean production plant is located in New Madrid, Missouri and Pioneer maintains a research center in Miami, Missouri.  Pioneer has purposely availed itself of the benefits and protections of Missouri's laws by consenting to personal jurisdiction here, such as by filing complaints in this District, including *Pioneer Hi-Bred Int'l, Inc. v. Monsanto Co.*, 4:97-cv-01609-ERW and *Pioneer Hi-Bred Int'l, Inc. v. Magee*, 1:03-cv-00045-LMB.  Pioneer has infringed Monsanto's patents in this District.  This Court retains personal jurisdiction over Pioneer under Mo. Rev. Stat. § 506.500.

6.      Upon information and belief, Pioneer is a wholly-owned subsidiary of DuPont. Upon information and belief, DuPont, as the principal: (a) has the right and ability to supervise its agent, Pioneer, (b) exercises dominion and control over Pioneer with respect to the activity alleged herein, (c) controls and directs the policies, business practices, decisions, processes, personnel and activities directly responsible for the activity alleged herein and (d) has an obvious and direct financial interest in the unauthorized and unlawful conduct alleged herein.

7.     DuPont is subject to personal jurisdiction in the State of Missouri because, among other things, DuPont has purposely availed itself of the benefits and protections of Missouri's laws such that it should reasonably anticipate this Court exercising jurisdiction over it. For example, DuPont has purposely availed itself of the benefits and protections of Missouri's laws by registering with the State of Missouri to do business in Missouri, and by maintaining an agent for service of process in Missouri.  DuPont and/or its agents have continuous and systematic contacts with this District and regularly transact business here.  For example, DuPont markets and sells its products in this District, maintains retailer, dealer and distributor relationships for its products throughout this District, registers its products in this District and has employees in this District. DuPont and/or its agents have infringed Monsanto's patents in this District.  This Court retains personal jurisdiction over DuPont under Mo. Rev. Stat. § 506.500.

8.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendants are subject to personal jurisdiction in this District and therefore "reside" in this district under 28 U.S.C. §§ 1391(c) and 1400(b).

## GENERAL ALLEGATIONS

**Monsanto's History Of Innovation And Ingenuity**

9.     Monsanto is in the business of developing, manufacturing, licensing and selling agricultural biotechnology, agricultural chemicals and other agricultural products.  Monsanto is headquartered in St. Louis and employs thousands of scientists and technical personnel.  Those Monsanto employees innovatively apply science to agriculture in relentless pursuit of the goal of improving crop yield and viability.

10.     Since the 1980s, Monsanto has been at the forefront of innovation and technology in agriculture.  For example, in 1999, President Clinton awarded Monsanto's scientists with the National Medal of Technology for their pioneering work in agricultural biotechnology.

11.     Monsanto annually invests over a billion dollars in research and development (on average, more than $2.6 million per day) to develop innovative products that ultimately benefit farmers and consumers.  Approximately half of that budget is invested in Monsanto's seed breeding programs and technology.  Globally, Monsanto's seed-based products that result from Monsanto's sustained research and development efforts have revolutionized agriculture and have made farming more economical, less labor-intensive and more environmentally-friendly. Monsanto has, where appropriate and in the interests of farmers and consumers, offered to license its exclusive technology to others, including certain of Monsanto's competitors, such as Pioneer.  Monsanto has also made its germplasm, breeding tools and expertise available on a philanthropic basis to projects such as the African Agricultural Technology Foundation's  Water Efficient Maize for Africa.    *See*  http://www.aatf-africa.org/userfiles/Wema-Summary-Collaboration.pdf.

12.     Leveraging the size and scope of Monsanto's industry-leading research and development efforts through the convergence of breeding and biotechnology has given Monsanto, on information and belief, a sustained edge in yield advantages over competitors that refuse to invest as heavily in research and development.

**Monsanto's Innovative Seed Chipping Technology**

13.     The inventions described and claimed in the Asserted Patents in this lawsuit are a cornerstone of Monsanto's technology enabling the convergence of breeding and biotechnology.  Those innovations are methods and systems for the automated sampling of material from seeds while maintaining germination viability (known in the industry as "seed chipping" or "chipping") which allow for the high-throughput testing of individual seeds in a population of seeds before the seeds are planted.  Those methods and systems reliably and accurately (a) sample and test tissue taken from each seed while maintaining seed viability, (b) track the relationship between each of the thousands of seeds and genes therein and the

corresponding tissue samples and (c) bulk seed populations with the desired trait by culling individual seeds based on the test results.

14.     The innovations disclosed and claimed in the Asserted Patents are revolutionizing plant breeding by allowing faster and more precise development of better crops and by allowing insight and understanding of plant performance, genetics, DNA linkage and thus improved agronomics and yield.  By allowing Monsanto to individually test every seed in large plant breeding programs and select those with desired characteristics, the patented inventions greatly speed up the advancement selection processes and enable dramatic increases in the quantity of a particular hybrid or inbred seed.

15.     The innovations of the Asserted Patents not only accelerate the launch of "trait stacks" (combinations of two or more agronomically important genetic characteristics, such as herbicide tolerance and pest resistance), they enable the development of commercially valuable trait stacks that would be otherwise practically infeasible using conventional plant breeding programs.  Monsanto is using and has used the patented inventions to develop commercially valuable and superior seed lines, such as the Roundup Ready® 2 Yield soybeans, and to launch those products earlier than otherwise possible.

16.     The systems and methods disclosed and claimed in the Asserted Patents also eliminate much of the labor and material resources otherwise expended on the growth, sampling, testing, harvesting and post-harvest processing required by conventional plant breeding programs.  In fact, the patented inventions eliminate all such resources (including thousands or tens of thousands of plants and hundreds or thousands of acres of land) otherwise wasted on seed that is ultimately discarded.  The patented inventions also eliminate months from the development cycle that are otherwise required for plants to germinate, grow, be sampled for testing and to finally produce seed.

17.     For his contribution to those inventions, Dr. Kevin L. Deppermann, Chief Engineer and Senior Fellow at Monsanto, received the 2011 Monsanto Edgar M. Queeny

Award, Monsanto's highest technical award given in recognition of the invention of technologically and commercially significant proprietary technology.

**Monsanto's Seed Chipping Patents**

18.     Monsanto's seed chipping technology is protected by more than a dozen patents issued by the United States Patent Office ("USPTO"), including U.S. Patent No. 7,502,113 (the "'113 Patent"), U.S. Patent No. 7,591,101 (the "'101 Patent"), U.S. Patent No. 7,611,842 (the "'842 Patent"), U.S. Patent No. 7,703,238 (the "'238 Patent"), U.S. Patent No. 7,767,883 (the "'883 Patent"), U.S. Patent No. 7,830,516 (the "'516 Patent"), U.S. Patent No. 7,849,632 (the "'632 Patent"), U.S. Patent No. 7,941,969 (the "'969 Patent") and U.S. Patent No. 7,998,669 (the "'669 Patent") (collectively, the "Asserted Patents").  Monsanto Technology LLC is the owner, by assignment, of the Asserted Patents and Monsanto Company is its exclusive licensee.

19.     The '113 Patent, a true and correct copy of which is attached hereto as Exhibit A, was issued on March 10, 2009.

20.     The '101 Patent, a true and correct copy of which is attached hereto as Exhibit B, was issued on September 22, 2009.

21.     The '842 Patent, a true and correct copy of which is attached hereto as Exhibit C, was issued on November 3, 2009.

22.     The '238 Patent, a true and correct copy of which is attached hereto as Exhibit D, was issued on April 27, 2010.

23.     The '883 Patent, a true and correct copy of which is attached hereto as Exhibit E, was issued on August 3, 2010.

24.     The '516 Patent, a true and correct copy of which is attached hereto as Exhibit F, was issued on November 9, 2010.

25.     The '632 Patent, a true and correct copy of which is attached hereto as Exhibit G, was issued on December 14, 2010.

26.     The '969 Patent, a true and correct copy of which is attached hereto as Exhibit H, was issued on May 17, 2011.

27.     The '669 Patent, a true and correct copy of which is attached hereto as Exhibit I, was issued on August 16, 2011.

**THE CONTROVERSY**

28.     Defendants' "Laser-Assisted Seed Selection" is a calculated, knowing and willful infringement of the Asserted Patents and an intentional misappropriation of Monsanto's intellectual property.   Defendants' use of the copied "Laser-Assisted Seed Selection" in their breeding experiments and hybrid development as well as Defendants' use, sale, offer for sale and/or importation of infringing products all damage and will continue to damage Monsanto's business, causing irreparable harm, for which there is no adequate remedy at law, unless Defendants' wrongful acts are preliminarily and/or permanently enjoined by the Court.

29.     On August 26, 2004 and June 15, 2005, Monsanto filed the U.S. Provisional Patent Applications from which the '113, '101, '842, '238, '883, '516, '632 and '969 Patents claim priority.   On March 2, 2006, the USPTO published the U.S. Patent Applications from which the '113, '101, '842 and '883 Patents issued.   Monsanto first publicly demonstrated its "seed chipper" system at the August 2007 Farm Progress Show in Decatur, Illinois.

30.     Within months of the publication of Monsanto's seed chipper patent applications, Pioneer filed its "copycat" U.S. Provisional Application Nos. 60/865,554 and 60/865,563 – which include crude, hastily hand-drawn figures and purport to describe and claim subject matter disclosed in Monsanto's seed chipper patent applications.   Defendants disclosed the (copied) "Laser-Assisted Seed Selection" system at the August 2008 Farm Progress Show in Boone, Iowa.

31.     On August 27, 2008, The News Journal (Wilmington, Delaware) reported on Defendants' disclosure at the August 2008 Farm Progress Show.   According to that article, William Niebur, then DuPont's Vice President of Crop Genetics Research and Development,

admitted that the functionality of Monsanto's seed chipper and Defendants' "Laser-Assisted Seed Selection" system is the same (i.e., "both get you to where you are going"), but claimed that Defendants' copied technology speeded up the process.[1]

32.    On information and belief, on April 9, 2009 DuPont uploaded to www.YouTube.com a video describing and promoting the infringing "Laser-Assisted Seed Selection".  A screen shot of that video is shown below.[2]



33.    According to the video described above in Paragraph 32:

Each seed is precisely positioned…, which allows us to do high throughput, automated laser cutting. … Samples … are collected and are submitted for DNA-based genetic analysis.  Molecular breeding techniques are used to identify desirable genetic combinations within each individual seed slice.  The larger portion of each seed remains viable for planting….    Seeds that are

---

[1]    Andrew Eder, *DuPont Uses Lasers in Seed Development*, THE NEWS JOURNAL, Aug. 27, 2008, at 6B, attached hereto as Exhibit J.

[2]    *See* DuPont Company, *Laser-Assisted Seed Selection*, YOUTUBE (Apr. 9, 2009), http://youtu.be/9JDtbIYthHM (last visited June 18, 2012); *accord* Pioneer Hi-Bred International, Inc., *Laser-Assisted Seed Selection*, YOUTUBE (June 18, 2012), http://youtu.be/PUcIEnWJowg (last visited June 18, 2012); *also available at* http://www.pioneer.com/home/site/about/research/pipeline/videos/ (last visited June 18, 2012)).

identified to have superior genetics are selected … for planting and advancement through the research program.[3]

34.    Pioneer's marketing materials describe the infringing "Laser-Assisted Seed Selection" as technology that "removes tissue from a corn kernel to analyze its genetics without affecting seed viability.  Seeds containing favorable genetics are therefore identified before they are planted."  Pioneer claims that the (copied) "technology is currently being successfully utilized broadly across Pioneer in corn breeding programs, trait integration, doubled haploid breeding and marker-assisted selection."[4]

35.    On information and belief, Defendants are copying Monsanto's patented chipping technology on a massive scale.  For example, Pioneer admits that it is using the (copied) "Laser-Assisted Seed Selection" "to test millions of seeds every year" and that its (copied) "Laser-Assisted Seed Selection" "is transforming Pioneer seed research, and is expected to increase the size and scope of Pioneer's breeding program five-fold once fully implemented worldwide."[5]  On information and belief, Pioneer has approximately 130 Maize Research Centers around the world.[6]

36.    In addition to infringing the Asserted Patents in the United States, on information and belief, Defendants have supplied from the United States at least a substantial portion of the uncombined components of the copied "Laser-Assisted Seed Selection" in such a manner as to actively induce the combination of those components outside the United States in manners that

---

3    *See* Transcript of DuPont Company, *Laser-Assisted Seed Selection*, YOUTUBE (Apr. 9, 2009), http://youtu.be/9JDtbIYthHM (last visited June 18, 2012), attached hereto as Exhibit K.

4    *See* Pioneer Hi-Bred, *Laser-Assisted Seed Selection* (Feb. 2011), attached hereto as Exhibit L; *accord* Pioneer Hi-Bred, *Laser-Assisted Seed Selection (LASS)* (Feb. 2012), attached hereto as Exhibit M.

5    *Supra* note 4.

6    *See* Barry McCarter, *Delivering the Pioneer Performance Advantage* (2011), *available at* http://www.pioneer.co.nz/pioneerpdf/proceedingscontractors/thepioneerperformanceadvanta ge_barry_mccarter.pdf, attached hereto as Exhibit N.

would infringe the Asserted Patents if such combination occurred within the United States.   On information and belief, such components, including but not limited to seed trays, seed carriers, and programmed controllers, are designed for and operative only in "Laser-Assisted Seed Selection," and thus have no substantial non-infringing use.   For example, according to DuPont's February 14, 2012 press release, DuPont is building a "Technology Hub" for Defendants' seed business in Beijing, China, that will employ about 50 researchers who will "leverage" Pioneer's so-called Accelerated Yield Technology (AYT™) system.   As described in that press release, Pioneer's AYT™ system "uses … laser assisted seed selection … to identify superior gene combinations earlier in the breeding process compared to traditional methods alone."   According to above-mentioned William Niebur, now DuPont Vice President and General Manager of Pioneer China, "Our vision is to work side-by-side with our Chinese collaborators to bring the AYT™ system together with other cutting-edge molecular breeding technologies to enhance and accelerate maize breeding in China."[7]

37.   On information and belief, Defendants are actively inducing their "Chinese collaborators" to make infringing combinations of "Laser-Assisted Seed Selection" components imported from the United States and to produce seed by processes that would infringe Monsanto's patents if performed in the United States.

38.   On information and belief, Defendants use the infringing technology in many (infringing) variations.   Defendants' use of "Laser-Assisted Seed Selection" to develop the Optimum® AQUAmax™ hybrids is, on information and belief, a calculated, knowing and willful infringement of the Asserted Patents and an intentional misappropriation of Monsanto's intellectual property.   On information and belief, such infringement is but a small part of

---

[7]   *See* Press Release, DuPont Company, *DuPont to Establish Molecular Breeding Technology Hub in China* (February 14, 2012)*, available at* http://us.vocuspr.com/Newsroom/Query.aspx?SiteName=DupontNew&Entity=PRAsset&SF_PRAsset_PRAssetID_EQ=122822&XSL=PressRelease&Cache=False, attached hereto as Exhibit O.

Defendants' pattern and practice of usurping the fruits of Monsanto's extensive research and development and Defendants' knowing refusal to honor Monsanto's commercially valuable and proprietary intellectual property rights.

ADDITIONAL ALLEGATIONS

**Optimum® AQUAmax™ Hybrids Infringe The Asserted Patents**

39.    On information and belief, Defendants used "Laser-Assisted Seed Selection" to develop the Optimum® AQUAmax™ hybrids.  For example, at least two presentations by individuals purporting to be associated with Pioneer suggest that Defendants' "Laser-Assisted Seed Selection" was used in developing Optimum® AQUAmax™ hybrids.  The first was a presentation entitled "Delivering the Pioneer Performance Advantage" given by, on information and belief, an agent of Pioneer at the June 19-21, 2011 "Pioneer Contractors Conference" in Hawke's Bay, New Zealand.  The second was a presentation entitled "DuPont Global Media Briefing" given by, on information and belief, Paul Schickler, Pioneer's President, at a global media briefing via webcast on September 14-15, 2010.[8]

40.    Defendants' use of "Laser-Assisted Seed Selection" to develop the Optimum® AQUAmax™ hybrids is, on information and belief, a calculated, knowing and willful infringement of the Asserted Patents and an intentional misappropriation of Monsanto's intellectual property. Defendants' use, sale, offer for sale and/or importation of Optimum® AQUAmax™ hybrids damage and will continue to damage Monsanto's business, causing irreparable harm, for which there is no adequate remedy at law, unless Defendants' wrongful acts are preliminarily and/or permanently  enjoined by the Court.

---

[8]    *See* McCarter, *Delivering the Pioneer Performance Advantage*, *supra* note 6; Paul Schickler, *DuPont Global Media Briefing* (Sept. 2010), *available at* http://www2.dupont.com/Media_Room/en_US/assets/downloads/presentation/20100915_11_PaulSchickler.pdf, attached hereto as Exhibit P.

**Defendants' Infringement Is Willful**

41.     Defendants were aware of at least several and, on information and belief, potentially all of the Asserted Patents prior to the filing of the present complaint.  Defendants have been on notice of the '113 and '842 Patents since at least February 24, 2010, the '101 Patent since at least October 16, 2009, the '238 Patent since at least June 23, 2010, the '883 Patent since at least December 30, 2010 and the '632, '969 and '669 Patents since at least January 18, 2012.  Defendants have, on information and belief, carefully monitored the filing, publication and prosecution of Monsanto's patent applications from which the Asserted Patents issued and were aware of the '516 Patent prior to the filing of this complaint.

42.     Defendants' knowledge of the Asserted Patents and Monsanto's intellectual property notwithstanding, Defendants continued to use the copied "Laser-Assisted Seed Selection", including in their breeding experiments, and to develop hybrids such as the Optimum® AQUAmax™ hybrids, all despite an objectively high likelihood that Defendants' actions constituted infringement of one or more valid patents.  Defendants either knew or should have known of such infringement of Monsanto's intellectual property rights.

**COUNT I - Patent Infringement ('113 Patent)**

43.     Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 42 of this Complaint.

44.     Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '113 Patent, either literally and/or under the doctrine of equivalents.

45.     On information and belief, Defendants and/or their agents have used, and are continuing to use, the methods claimed in the '113 Patent in Defendants' breeding programs, including but not limited to the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

46.     Defendants have been on notice of the '113 Patent since at least February 24, 2010.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '113 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

47.     The direct and indirect infringement of the '113 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

48.     Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial, including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

49.     On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '113 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

50.     On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '113 Patent by others unless and until enjoined by this Court.

## COUNT II - Patent Infringement ('101 Patent)

51.     Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 50 of this Complaint.

52.     Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '101 Patent, either literally and/or under the doctrine of equivalents.

13

53.     On information and belief, Defendants and/or their agents have made and used, and are continuing to make and use, the systems claimed in the '101 Patent in Defendants' breeding programs, including but not limited to in connection with the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

54.     Defendants have been on notice of the '101 Patent since at least October 16, 2009.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '101 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

55.     The direct and indirect infringement of the '101 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

56.     Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial, including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.     On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '101 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

58.     On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '101 Patent by others unless and until enjoined by this Court.

## COUNT III - Patent Infringement ('842 Patent)

59.     Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 58 of this Complaint.

60.     Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '842 Patent, either literally and/or under the doctrine of equivalents.

61.     On information and belief, Defendants and/or their agents have used, and are continuing to use, the methods claimed in the '842 Patent in Defendants' breeding programs, including but not limited to the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

62.     Defendants have been on notice of the '842 Patent since at least February 24, 2010.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '842 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

63.     The direct and indirect infringement of the '842 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

64.     Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial, including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

65.     On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '842 Patent.  Such willful and deliberate direct and indirect

infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

66.    On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '842 Patent by others unless and until enjoined by this Court.

**COUNT IV - Patent Infringement ('238 Patent)**

67.    Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 66 of this Complaint.

68.    Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '238 Patent, either literally and/or under the doctrine of equivalents.

69.    On information and belief, Defendants and/or their agents have used, and are continuing to use, the methods claimed in the '238 Patent in Defendants' breeding programs, including but not limited to the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

70.    Defendants have been on notice of the '238 Patent since at least June 23, 2010. On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '238 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

71.    The direct and indirect infringement of the '238 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

72.    Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial,

including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

73.     On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '238 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

74.     On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '238 Patent by others unless and until enjoined by this Court.

**COUNT V - Patent Infringement ('883 Patent)**

75.     Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 74 of this Complaint.

76.     Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '883 Patent, either literally and/or under the doctrine of equivalents.

77.     On information and belief, Defendants and/or their agents have made and used, and are continuing to make and use, the products claimed in the '883 Patent in Defendants' breeding programs, including but not limited to in connection with the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

78.     Defendants have been on notice of the '883 Patent since at least December 30, 2010.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '883 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

79.     The direct and indirect infringement of the '883 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

80.     Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial, including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

81.     On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '883 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

82.     On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '883 Patent by others unless and until enjoined by this Court.

**COUNT VI - Patent Infringement ('516 Patent)**

83.     Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 82 of this Complaint.

84.     Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '516 Patent, either literally and/or under the doctrine of equivalents.

85.     On information and belief, Defendants and/or their agents have used, and are continuing to use, the methods claimed in the '516 Patent in Defendants' breeding programs, including but not limited to the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

86.     Defendants have been on notice of the '516 Patent prior to the filing of this complaint and Defendants have, on information and belief, carefully monitored the filing, publication and prosecution of Monsanto's patent applications from which the '516 Patent issued prior to the filing of this complaint.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '516 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

87.     The direct and indirect infringement of the '516 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

88.     Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial, including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

89.     On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '516 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

90.     On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '516 Patent by others unless and until enjoined by this Court.

**COUNT VII - Patent Infringement ('632 Patent)**

91.     Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 90 of this Complaint.

92.     Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '632 Patent, either literally and/or under the doctrine of equivalents.

93.     On information and belief, Defendants and/or their agents have used, and are continuing to use, the methods claimed in the '632 Patent in Defendants' breeding programs, including but not limited to the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

94.     Defendants have been on notice of the '632 Patent prior to the filing of this complaint and Defendants have, on information and belief, carefully monitored the filing, publication and prosecution of Monsanto's patent applications from which the '632 Patent issued prior to the filing of this complaint.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '632 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

95.     The direct and indirect infringement of the '632 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

96.     Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial, including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

97.     On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '632 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

98. On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '632 Patent by others unless and until enjoined by this Court.

### COUNT VIII - Patent Infringement ('969 Patent)

99. Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 98 of this Complaint.

100. Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '969 Patent, either literally and/or under the doctrine of equivalents.

101. On information and belief, Defendants and/or their agents have used, and are continuing to use, the methods claimed in the '969 Patent in Defendants' breeding programs, including but not limited to the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

102. Defendants have been on notice of the '969 Patent prior to the filing of this complaint and Defendants have, on information and belief, carefully monitored the filing, publication and prosecution of Monsanto's patent applications from which the '969 Patent issued prior to the filing of this complaint.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the '969 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

103. The direct and indirect infringement of the '969 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

104. Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial,

21

including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

105.    On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '969 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

106.    On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '969 Patent by others unless and until enjoined by this Court.

**COUNT IX - Patent Infringement ('669 Patent)**

107.    Monsanto restates and incorporates by reference, as though fully set forth herein, paragraphs 1 through 106 of this Complaint.

108.    Either directly or through their agents, Defendants have infringed, and are continuing to infringe, one or more claims of the '669 Patent, either literally and/or under the doctrine of equivalents.

109.    On information and belief, Defendants and/or their agents have made and used, and are continuing to make and use, the systems claimed in the '669 Patent in Defendants' breeding programs, including but not limited to in connection with the use of Defendants' so-called "Laser-Assisted Seed Selection" technology and in the development of the Optimum® AQUAmax™ hybrids which have been offered for sale and sold in the United States.

110.    Defendants have been on notice of the '669 Patent prior to the filing of this complaint and Defendants have, on information and belief, carefully monitored the filing, publication and prosecution of Monsanto's patent applications from which the '669 Patent issued prior to the filing of this complaint.  On information and belief, Defendants have, and will continue to, willfully, deliberately and actively induce and/or contribute to the infringement of the

22

'669 Patent by others by causing their breeders to use Defendants' so-called "Laser-Assisted Seed Selection" technology in their breeding programs.

111.    The direct and indirect infringement of the '669 Patent by Defendants and/or their agents will continue to cause Monsanto irreparable injury and damage, for which there is no adequate remedy at law, until Defendants are enjoined from infringing said patent.

112.    Monsanto is entitled to recover from Defendants the damages sustained by Monsanto as a result of Defendants' wrongful acts in an amount subject to proof at trial, including lost profits and an amount not less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

113.    On information and belief, Defendants are engaging in willful and deliberate direct and indirect infringement of the '669 Patent.  Such willful and deliberate direct and indirect infringement justifies an increase of three times the damages to be assessed pursuant to 35 U.S.C. § 284 and an award of attorneys' fees under 35 U.S.C. § 285.

114.    On information and belief, Defendants will continue to infringe, induce others to infringe and/or contribute to the infringement of the '669 Patent by others unless and until enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Monsanto respectfully requests that the Court enter judgment in its favor and against Defendants, granting the following relief:

A.      Judgment that Defendants have infringed one or more claims of each of the Asserted Patents;

B.      Judgment that Defendants have induced others to infringe one or more claims of each of the Asserted Patents;

C.      Judgment that Defendants have contributed to the infringement by others of one or more claims of each of the Asserted Patents;

D.      Judgment that Defendants' direct and indirect infringement has been willful;

23

E.     An Order finding that Defendants' actions make this case exceptional under 35 U.S.C. § 285;

F.     An award of damages adequate to compensate Monsanto for infringement , including damages pursuant to 35 U.S.C. § 284, and including prejudgment and post-judgment interest;

G.     An Order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees and attorneys, and all those persons acting in concert or participation with them from further acts of infringement of the Asserted Patents and from selling any products developed by infringing the Asserted Patents;

H.     An award of treble damages for willful infringement pursuant to 35 U.S.C. § 284;

I.     A post-verdict and post-judgment accounting for any infringement of the Asserted Patents not otherwise compensated by the jury's damages award and the requested injunctive relief;

J.     An award of costs and expenses in this action; and

K.     Such other and further relief as the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(a), Monsanto respectfully requests a trial by jury of any and all issues on which a trial by jury is available under the applicable law.

Dated: June 18, 2012

Respectfully submitted,
DOWD BENNETT LLP


By: /s/ James F. Bennett
_____

OF COUNSEL:

Edward L. Dowd, Jr., # 8341
edowd@dowdbennett.com
James F. Bennett, # 65673
jbennett@dowdbennett.com
7733 Forsyth Blvd., Suite 1410
St. Louis, MO 63105
(314) 889-7300 telephone
(314) 863-2111 facsimile

LATHAM & WATKINS LLP
Maximilian A. Grant
max.grant@lw.com
555 Eleventh Street, NW
Suite 1000
Washington DC 20004-1304
(202) 637-2200 telephone
(202) 637-2201 facsimile

*Attorneys for Plaintiffs Monsanto Company
and Monsanto Technology LLC*

Terry Kearney
terry.kearney@lw.com
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600 telephone
(650) 463-2600 facsimile

Roger Chin
roger.chin@lw.com
505 Montgomery Street, Suite 2000
San Francisco CA 94111-6538
(415) 391-0600 telephone
(415) 395-8095 facsimile