UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) No. 4:12-CV-1090 (CEJ) |
| PIONEER HI-BRED INTERNATIONAL, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM & ORDER**

This matter is before the Court on the motion for a protective order and motion to determine the sufficiency of responses to requests for admission filed by plaintiffs Monsanto Company and Monsanto Technology LLC (collectively Monsanto), against defendants Pioneer Hi-Bred International, Inc. and E.I. du Pont de Nemours & Company (collectively DuPont). Defendants have filed responses in opposition and the issues are fully briefed.

### I. Background

On June 18, 2012, Monsanto filed this action alleging that DuPont's Laser Assisted Seed Selection (LASS) technology infringed upon nine of its patents. [Doc. #1]. On January 9, 2013, Monsanto amended its complaint, asserting infringement of five additional patents. [Doc. #42]. These fourteen patents involve seed chipping technology, which includes the "methods and systems for the automated sampling of material from seeds while maintaining germination viability . . . which allow for the high-throughput testing of individual seeds in a population of seeds before the seeds are planted." [Doc. #42, at 5].

DuPont asserts counterclaims against Monsanto for infringement upon two of its patents, U.S. Patent Nos. 7,588,151 and 7,591,374. DuPont specifically alleges that Monsanto's "method of handing seeds involving (i) validating the identity of a previously harvested ear corn sample, autonomously sorting shelled corn seed based on one or more characteristics automatically non-destructively sensed and accumulating an isolated sub-set of sorted shelled corn seed for further use;" and (ii) "validating the identity of a previously harvested soy bean plant, autonomously sorting threshed soybean seeds based on one or more characteristics automatically non-destructively sensed and accumulating an isolated set of sorted seeds for further use" infringes on their '151 and '374 patents. [Doc. #48, at 60-61].

Monsanto filed the instant motions seeking a protective order to limit the scope of 2 interrogatories and 80 requests for production propounded by DuPont in its second set of interrogatories and fourth and fifth sets of document requests[1] and to compel DuPont to provide complete responses to its requests for admission.

II. Discussion

A. Protective Order

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery for actions filed in federal court:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

---

[1] Monsanto challenges Dupont's Second Set of Interrogatories Nos. 10-11; Fourth Set of Document Requests Nos. 144--149, 151-160, 168-175; and Fifth Set of Document Requests Nos. 180-235.

However, Rule 26(c)(1) authorizes a court, for good cause, to issue an order limiting discovery "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense[.]" "Because of liberal discovery and the potential for abuse, the federal rules 'confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required." <u>Misc. Docket Matter No. 1 v. Mis. Docket Matter. 2</u>, 197 F.3d 922, 925 (8th Cir. 1999). The party moving for a protective order has the burden of demonstrating good cause for the order. <u>Id.</u> at 926. Conclusory statements are not sufficient to establish good cause. <u>Id.</u>

Monsanto presents two arguments in support of its motion for a protective order: (1) the seventy-eight discovery requests regarding Monsanto's use of individual steps of DuPont's patented five-step process are overbroad and impose an undue burden; and (2) Dupont's four discovery requests using the phrase "Seed Sorting & Selection Technology" contains an overbroad definition that must be limited.

### 1. Discovery of Monsanto's Methods of Seed Processing

Monsanto describes the inventive aspect of DuPont's '151 and '374 patents as "the bringing together—into one integrated method—five well-known individual steps long used in processing corn or soybean plant samples." [Doc. #57, pp. 3]. Monsanto argues that the discovery requests regarding its use of any of the five well-known steps, taken in isolation, are not reasonably calculated to the admission of relevant evidence because the use of one or a few individual steps cannot conceivably infringe. The patent application for '151 describes the five-step method as follows:

1. A method of handling corn seed comprising:

3

> (a) validating the identity of a previously harvested ear corn sample;
> (b) shelling the ear corn sample into shelled corn seed;
> (c) autonomously sorting with a machine the shelled corn seed based on one or more characteristics automatically non-destructively sensed from the shelled corn seed by a sensor associated with the machine;
> (d) automatically conveying and maintaining with an apparatus controlled by a controller, in isolation from other seed, a selected sub-set of the sorted shelled corn with the identity of the validated ear corn sample; and
> (e) accumulating the isolated sub-set of sorted shelled corn seed for further use with the association of the isolated sub-set of sorted shelled corn with the identity of the validated ear corn sample.

See '151 Patent Application, Doc. # 57-2, at Col. 24:19-37. The patent application for '374 contains an almost identical five-step method for handling sets of soybean seed. See '374 Patent Application, Doc. #57-3, at Col. 24:17-33.

In response, DuPont argues that its discovery requests involving an inquiry into isolated steps of its patented five-step seed handling process is appropriate because the "key inventive aspect" of '151 and '347 is "sorting seeds based on pre-identified, nondestructively determined criteria." In support of this argument, DuPont cites to its patent applications, which describe '151 and '374 as "a method and apparatus for processing seed or seed samples [that] includes an autonomous sorter which sorts seeds by pre-programmed criteria." See Doc. ##57-2, 57-3, at Abstract. DuPont explains that because some of Monsanto's patents and applications describe technology containing this same key inventive aspect, discovery regarding one or a few steps of its patented five-step process should be permitted.

The Court finds Invensas Corp. v. Renesas Electronics Corp., 287 F.R.D. 273 (D.Del. Nov. 21, 2012), regarding discovery in patent cases, to be instructive:

> Whether and when discovery as to unidentified and unaccused products is . . . "relevant information" under Rule 26 depends on the level of specificity offered by the requesting party. If the requesting party can articulate, in a focused, particularized manner, the characteristics or

4

> components that the unaccused products must have in order to suggest that they may infringe the patents-in-suit, the discovery-at-issue is more likely to be seen as relevant—as relating to an issue . . . necessarily in the case. Some courts have described this as a showing that the requested discovery relates to products "reasonably similar" to those that have been specifically accused of infringement.

Id. at 279 (citations omitted).

Similarly, Tesseron, LTD v. R.R. Donnelley & Sons Co., 2007 WL 2034286, *3 (N.D. Ohio July 10, 2007), held that in order for "discovery of unidentified and unaccused systems" to go forward, the party seeking such discovery must: (1) "identify with requisite specificity the type of product or system at issue;" and (2) "identify with specificity the component, characteristic, or element of the product or system that the claimants believes will render the product or system infringing." Such requirements are necessary to prevent the discovery of "a broad spectrum of technology" that "cannot conceivably infringe on any of [the requesting party's] patents." Id. at *5.

The Court finds that DuPont has not articulated with specificity how the discovery it seeks is related to its infringement allegations, such that it will produce technology reasonably similar to DuPont's patents. In making this determination, the Court reviewed DuPont's applications for the '151 and '347 patents. See The Medicines Co. v. Teva Parenteral Medicines, 2013 WL 3658020, *4 (D.Del. July 11, 2013) (court referenced the patent application to describe the key inventive aspect of a process). In the background portion of both applications, DuPont highlights the time-consuming nature of the current manual seed processing system, in which each of the steps are usually conducted separately with non-integrated devices. Doc. ## 57-2, 57-3 at Col. 1-2. The applications then describe DuPont's invention as a "seed or seed sample

5

handling *process and system*" that "*includes* automated handling of previously harvested seeds, by assigning or validating an identifier to a set of seeds, automatically performing one or more operations on the set of seed, and accumulating an end product and storing information about the end product correlated to the identifier." Id. at Col. 2:55-62 (emphasis added). The use of the words "process," "system," and "includes" supports Monsanto's argument that discovery of any of the steps, taken in isolation, is irrelevant because in order for Monsanto to infringe it must use DuPont's entire process or method.

The Court has also considered DuPont's response to the U.S. Patent and Trademark Office's rejection of the patentability of '151 and '347. In its response, Dupont described '151 and '374 as "a specific combination of *inter-related steps*." Doc. #57-4, at p. 6 (emphasis added). Dupont argued that their patent applications did "not present a prima facie case of obviousness . . . because *it is the specific combination of steps of claim 1 that distinguishes it and makes it patentable*." Id. at pp. 6-7 (emphasis added). DuPont further argued that "[e]ach of these steps relates to, builds upon, and is independent manual activities. It is the *combination* of validating, shelling, autonomously sorting, automatically conveying and maintaining, and accumulating, in the context of each of the *related* method steps." Id. at p. 9 (emphasis added).

However, regardless of the arguments it made to the U.S. Patent and Trademark Office, DuPont now asserts that the key inventive aspect of its patents is the sorting of seeds based on pre-identified, nondestructively determined criteria. The Court finds this argument to be unconvincing since sorting is only one step out of its self-described

6

"combination of inter-related steps." DuPont has not provided sufficient support to show how the discovery of Monsanto's use of any of the five-steps, taken in isolation, would lead to the discovery of processes reasonably similar to DuPont's patents or how Monsanto's methods of sorting seeds "based on pre-identified, nondestructively determined criteria" would conceivably infringe its asserted patents without the combination of the other "inter-related" steps. See Invensas, 287 F.R.D. at 285 n. 13 (citing IP INNOVATION L.L.C. v. Sharp Corp., 219 F.R.D. 427, 429 (N.D. Ill. Dec. 8, 2003) (court "allow[ed] discovery into defendant's product models not yet accused of infringement that contained certain chips, because plaintiff had identified those chips as *integral* to its infringement claim and 'believe[d] that all of the models which use the chips . . . infringe the asserted patents.") (emphasis added).

Thus, the Court concludes that DuPont's requests seeking to discover information about Monsanto's use of individual steps from DuPont's five-step method are overbroad. However, this conclusion should not be interpreted to mean that DuPont's requests need to mirror the language of its patent claims. Instead, DuPont must simply make reasonable inquiries in its discovery requests with the purpose of identifying technology or methods used by Monsanto which are *reasonably similar* to DuPont's patented process. In other words, DuPont's discovery must be geared to identify technology or methods that incorporate the essential elements of DuPont's asserted patents. See Kellogg v. Nike, 2007 WL 4570871, *8 (D.Neb. Dec. 26, 2007) (Plaintiffs must seek "to identify which products match a particular description—caps made, used and sold by the defendants which incorporate the accused four-vent

design."); Invensas, 287 F.R.D. at 284-85 (a definition does not necessarily have to track the language of the key claims of the patents-in-suit).

As a result of this determination, Monsanto should no longer be concerned with the alleged undue burden and expense that would arise from "discovery requests directed at single steps of the claimed methods or at groups of steps missing key steps of the claimed process." Accordingly, DuPont will be required to revise its discovery requests at issue in compliance with this order.[2]

### 2. Seed Sorting & Selection Technology

Monsanto next argues that the four discovery requests using the phrase "Seed Sorting & Selection Technology" contains an overbroad definition that must be limited. In response to Monsanto's concerns, DuPont proposes the following revised definition:[3]

> "Seed Sorting & Selection Technology" means any method, process, apparatus or system that involves at least each of the following:
>
> (a) validating the identity of seed;
> (b) conveying seed with a machine to at least one device for nondestructively sampling seed, at least one sorter for sorting seed based on programmed criteria, or both; and
> (c) sorting the seed with a machine based on at least one characteristic nondestructively determined about the seed.

Monsanto argues that this definition continues to be insufficient because it does not include critical steps of DuPont's five-step process (such as threshing or shelling) and that such a broad definition will lead to discovery of any seed sorter that Monsanto

---

[2] DuPont briefly argues that some its discovery requests seek relevant information relating to possible invalidity defenses and claim construction. However, DuPont does not provide sufficient information or explanation that would enable the Court to address this argument.

[3] DuPont argues that in February 2013, Monsanto agreed to apply this definition. Monsanto denies this assertion. The Court will focus on the sufficiency of the definition and will not guess whether such an agreement existed.

8

may use, such as a color sorter, which is unrelated to DuPont's claims. Thus, Monsanto proposes the following definition (emphasis added to show variance):

"Seed Sorting & Selection Technology" means any <u>integrated</u> method, process, apparatus or system that involves at least each of the following:

(a) validating the identity of <u>an ear corn or soybean plant sample</u>;
(b) <u>shelling or threshing the validated sample</u>;
(c) sorting the <u>shelled or threshed seed</u> with a machine based on <u>a characteristic of the seed</u> nondestructively determined <u>by a sensor associated with the machine</u>;
(d) <u>maintaining with an apparatus the sorted seed in isolation from other seeds while maintaining with a computer an association of the sorted seed with the validated sample from which it came</u>.

The Court finds that DuPont's proposed definition sufficiently incorporates the essential elements of DuPont's five-step process in order to identify reasonably similar technologies. First, both DuPont and Monsanto agree that the accumulating step is not an essential element as neither party included it in their proposed definition. Second, DuPont acknowledges in its response brief that shelling or threshing is implied in its proposed definition. Third, Monsanto could conceivably infringe on DuPont's asserted patents when processing any type of seed, not just an ear corn or soybean seed. Lastly, DuPont's description of the way in which the seed must be conveyed or sorted sufficiently identifies "the component, characteristic, or element of the product or system that the claimants believe will render the product or system infringing." <u>See Tesseron</u>, 2007 WL 2034286, at *3. DuPont's definition is not attempting to discover one individual step out of the five-step process; instead it is directed at identifying technology that incorporates the essential elements of the five-step process.

Accordingly, Monsanto will be directed to respond to the four discovery requests utilizing DuPont's proposed definition of "Seed Sorting & Selection Technology."

### B. Requests for Admission

In its motion to determine the sufficiency of DuPont's responses to its requests for admission, Monsanto argued that DuPont did not provide complete answers to Nos. 1, 3-5, 7-9, 11-16, 18-27, and 30. In response, DuPont amended its responses. See Def.'s Amended Responses, Doc. #86-1. However, Monsanto contends that Nos. 3, 7, 11, and 15-16 remain improper and incomplete.

"Requests for admission are intended to eliminate issues that are not in dispute between the parties by establishing the admission of facts about which there is no real dispute, thus narrowing the issues for trial." Stockdale v. Stockdale, 4:08-CV-1773-CAS (E.D. Mo. Dec. 30, 2009). "Requests for admission are also intended to save costs by establishing uncontested facts without the time, trouble and expense of proving these facts through discovery." Id. "Requests for admission should be simple and direct, as parties are not required to admit or deny requests that consist of vague or ambiguous statements." Id. Federal Rule of Civil Procedure Rule 26(a)(4) instructs how a party shall answer such requests:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

The five requests for admission that remain at issue involve the phrase "seed selection technology," which Monsanto has defined as:

> Any method, process, apparatus or system of high-throughput, non-destructive seed sampling which involves removing a portion from seed, including but not limited to Defendants' "Laser Assisted Seed Selection," the subject matter described and claimed in the Monsanto Patents, and the subject matter described and claimed in U.S. Patent Application Nos. 60/865,554 and 61/014,366.

Doc. #60-1, at p. 2; Doc. #60-6, at p.1.

DuPont objects to this definition because it uses Monsanto's patents as an example. DuPont argues that by admitting it uses "seed selection technology," as defined by Monsanto, DuPont would be, in effect, admitting or implying that it has infringed or is currently infringing on the "subject matter described and claimed in the Monsanto patents." DuPont further argues that it does not believe that its LASS technology falls within Monsanto's definition of "seed selection technology." Thus, DuPont argues that its revised responses appropriately objects to Monsanto's definition and then sufficiently admits or denies the requests.

After review of the parties' arguments, the requests for admissions at issue, and the corresponding answers, the Court finds that DuPont's answers to Nos. 3, 7, 11, and 15-16 are neither improper nor incomplete. "Requests for admission are intended to eliminate issues that are not in dispute between the parties by establishing the admission of facts about which there is no real dispute[.]" Stockdale, 4:08-CV-1773. DuPont clearly disputes and objects to Monsanto's definition of "seed selection technology" and does not believe that LASS qualifies as such a technology. Thus, at this stage of the litigation, DuPont has appropriately declined to admit that LASS is "seed selection technology" as defined by Monsanto.

The Court further finds that DuPont has sufficiently responded to the "substance of the matter" in each request at issue as required by Fed.R.Civ.P. 26(a). For instance,

requests for admissions Nos. 3 and 7 similarly and respectively state: "Admit that [LASS] was the only Seed Selection Technology you used during the research and development of Optimum® AQUAmax™ hybrids" and "Admit that [LASS] was the only Seed Selection Technology you used during the research or development of a commercial seed product other than Optimum® AQUAmax™ hybrids." Doc. #86-1, at pp. 2-4. In response to both of these requests, DuPont objects, stating that "'Seed Selection Technology' is vague and seeks a legal conclusion on the issue of infringement." However, DuPont continues its response by admitting that it used LASS during some of its research or development, while also denying that it used "Seed Selection Technology" during the same research and development. Id. These responses appropriately decline to admit the fact that LASS is a "Seed Selection Technology" as defined by Monsanto, which is an issue in dispute between the parties. The same can be said for DuPont's answers to Nos. 11, 15, and 16. Accordingly, DuPont is not required to amend its responses to Monsanto's first set of requests for admission.

\* \* \*

For the above stated reasons,

**IT IS HEREBY ORDERED** that the motion for a protective order, filed by plaintiffs Monsanto Company and Monsanto Technology LLC [Doc. #56], is **granted in part** and **denied in part**.

**IT IS FURTHER ORDERED** that motion to determine the sufficiency of responses to requests for admission, filed by defendants E.I. du Pont de Nemours and Company and Pioneer Hi-Bred International, Inc. [Doc. #58], is **denied**.

**IT IS FURTHER ORDERED** that the motions for a hearing [Doc. ##91, 100] are **denied**.

**IT IS FURTHER ORDERED** that defendants shall have until **April 23, 2014**, to submit to plaintiffs revised discovery requests in compliance with this order.

**IT IS FURTHER ORDERED** that plaintiffs shall have until **April 23, 2014** to answer the four discovery requests utilizing defendants' proposed definition of "Seed Sorting & Selection Technology."

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2014.